*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LAWRENCE R. GLAZER,

        *Plaintiff-Appellant,*

    *v.*

No. 10-3416

CHASE HOME FINANCE LLC; CINDY A.
SMITH; REIMER, ARNOVITZ, CHERNEK &
JEFFREY CO., L.P.A.; RONALD CHERNEK;
and DARRYL E. GORMLEY,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-01262—Christopher A. Boyko, District Judge.

Argued: March 8, 2012

Decided and Filed:  January 14, 2013

Before:  GRIFFIN and KETHLEDGE, Circuit Judges; and THAPAR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Nicolette Glazer, LAW OFFICES OF LARRY R. GLAZER, Century City,
California, for Appellant.  Thomas T. Brick, GALLAGHER SHARP, Cleveland, Ohio,
Danielle J. Szukala, BURKE, WARREN, MacKAY & SERRITELLA, P.C., Chicago,
Illinois, for Appellees. **ON BRIEF:** Nicolette Glazer, LAW OFFICES OF LARRY R.
GLAZER, Century City, California, for Appellant.  Thomas T. Brick, Lori E. Brown,
Holly M. Olarczuk-Smith, GALLAGHER SHARP, Cleveland, Ohio, Danielle J.
Szukala, BURKE, WARREN, MacKAY & SERRITELLA, P.C., Chicago, Illinois,
Nelson M. Reid, Vladimir P. Belo, BRICKER & ECKLER LLP, Columbus, Ohio, for
Appellees.

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

---

**OPINION**

---

GRIFFIN, Circuit Judge.   This action involves claims under the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692, and Ohio law that plaintiff Lawrence Glazer asserts against a mortgage servicing company and the lawyers it hired to foreclose on property Glazer inherited.   The district court dismissed the federal claims under Federal Rule of Civil Procedure 12(b)(6) and declined to exercise jurisdiction over the state-law claims.   For the reasons that follow, we affirm in part and reverse in part.   In doing so, we hold that mortgage foreclosure is debt collection under the Act.

I.

In August 2003, non-party Charles Klie purchased property in Upper Arlington, Ohio.   He obtained financing for the purchase from non-party Coldwell Banker Mortgage Corporation ("Coldwell Banker") and gave Coldwell Banker a mortgage on the property.   Coldwell Banker promptly assigned its ownership rights in Klie's note and mortgage to the Federal National Mortgage Corporation ("Fannie Mae") but continued to service the loan.   For reasons unknown, this assignment was never publicly recorded.

Four years later, in October 2007, Coldwell Banker transferred its servicing rights to non-party JP Morgan Chase Bank ("JP Morgan").   This transaction did not transfer any ownership rights in the note and mortgage (Coldwell Banker had none to give).   But in order to sell its servicing rights, Coldwell Banker had to assign whatever rights it had in the note and mortgage (which were none) to JP Morgan, who then reassigned the rights to Fannie Mae.   On November 1, 2007, defendant Chase Home Finance LLC ("Chase"), an arm of JP Morgan, obtained servicing rights to the Klie loan, which was current at the time.   Chase began to service the loan and accepted timely payments for November and December of 2007 and January of 2008.

Klie died on January 31, 2008.  By the middle of May 2008, the loan was in default.  Chase hired defendant Reimer, Arnovitz, Chernek & Jeffrey Co., LPA, and two of its attorneys ("RACJ") to foreclose on the Klie property.  On June 2, 2008, RACJ prepared an assignment of the note and mortgage on behalf of JP Morgan that purported to "sell, convey and transfer all rights and interests in the Klie promissory note and the mortgage . . . to Chase" in order to establish Chase's right to foreclose.  According to Glazer, the assignment transferred absolutely no rights because *Fannie Mae* still owned the note and mortgage by virtue of Coldwell Banker's assignment shortly after origination.[1]

In June 2008, RACJ filed a foreclosure action on Chase's behalf in state court, alleging that Chase held and owned the Klie promissory note and that the original note had been lost or destroyed.  According to Glazer, Chase and RACJ fraudulently concealed the fact that *Fannie Mae* owned the loan, and that the original note was *not* lost or destroyed and was being held by a custodian for Fannie Mae's benefit.  The complaint named plaintiff Lawrence Glazer as someone possibly having an interest in the Klie property, and RACJ served Glazer with process.  Glazer answered and asserted defenses.  He also notified RACJ that he disputed the debt and requested verification.  RACJ refused to verify the amount of the debt or its true owner.

In July 2008, the probate court handling Klie's estate transferred all rights in the property to Glazer as a beneficiary under Klie's will.  RACJ filed an amended foreclosure complaint and again represented that Chase owned the note.  Litigation continued, and RACJ eventually moved for summary judgment, representing once again that Chase owned the Klie note.  The court granted the motion and entered a decree of foreclosure.  It later vacated that ruling and demanded that RACJ produce the original note for inspection.  Despite the vacatur of the foreclosure decree, RACJ scheduled a sheriff's sale but later cancelled it.  Chase later dismissed the foreclosure action without prejudice.

---

[1]As the magistrate judge noted in his recommendation, "Chase has offered no explanation as to how Coldwell Banker could assign its rights in the mortgage and note to another entity [when those rights] had previously been assigned, nor has Chase disputed that an assignment to Fannie Mae occurred."

In the midst of the foreclosure proceedings, Glazer filed the instant lawsuit, alleging that Chase (and an employee) and RACJ violated the FDCPA and Ohio law when they, among other things, falsely stated in the foreclosure complaint that Chase owned the note and mortgage, improperly scheduled a foreclosure sale, and refused to verify the debt upon request. Chase and RACJ moved to dismiss. A magistrate judge recommended dismissing the federal claims and declining to exercise discretionary jurisdiction over the state-law claims. Glazer filed objections and sought leave to amend the complaint to add new allegations. The district judge adopted the recommendation, granted defendants' motions, and denied leave to amend.

Glazer timely appealed.

## II.

We review de novo a district court's order to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6). In doing so, we accept all well-pled allegations as true and determine whether they plausibly state a claim for relief. *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011).

## III.

## A.

Glazer alleges that Chase violated various provisions of the FDCPA, all of which apply only to "debt collectors" as defined in the Act. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435–36 (6th Cir. 2008). The Act's definition of "debt collector" consists of a general definition followed by a number of exceptions. *See* 15 U.S.C. § 1692a(6). One exception is relevant here: the term "debt collector" does not include any person attempting to collect "any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii). According to Glazer's own allegations, Chase obtained the Klie loan for servicing *before* default. Therefore, Chase is not a "debt collector." *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

Glazer tries to avoid this result with two arguments, but neither is availing.  He contends first that this exception applies only to mortgage servicers who *own* the debt obligation they service.  Glazer is mistaken.  The exception applies to a person collecting a debt "asserted to be owed or due . . . *another*" when the efforts concern a debt that was current when first obtained by the person.  Requiring debt ownership would render the exception nugatory.  *Cf. Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996) (concluding that even if the defendant did not own the auto loan it was servicing, it was not a debt collector, because the loan was current when obtained for servicing).

Second, Glazer asserts that the exception does not apply to *sub*servicers, like Chase, who service the underlying debt on behalf of the contractually obligated servicer.  He contends that *JP Morgan*, not Chase, obtained contractual servicing rights in November 2007, so only JP Morgan meets the exception.  Glazer is again mistaken.  Regardless of how he labels Chase—servicer or *sub*servicer—the result is the same.  Chase started servicing the Klie debt when it was current.  That it did so pursuant to an agreement with JP Morgan rather than the debt's owner makes no legal difference under the Act.  *See Dawson v. Dovenmuehle Mortg., Inc.*, No. CIV.A.00-6171, 2002 WL 501499, at *5 n.4 (E.D. Pa. Apr. 3, 2002).

B.

Glazer sought leave to amend his complaint to "correct, supplement, and clarify certain factual allegations based on facts disclosed by [Chase] for the first time during a properly noticed deposition in the then pending state foreclosure action."  The deposition he cited was that of Chase's designated corporate representative, taken October 19, 2009.  As Glazer clarifies on appeal, the "new evidence" he sought to include in his amended complaint is the fact that JP Morgan and Chase entered into a "reciprocal collection agreement" on November 1, 2007, under which Chase agreed to—and later did—service the Klie loan *only after* it fell into default.  The allegation, if permitted, would bring Chase out of the exception and make it a "debt collector."  The district court denied Glazer leave to include the allegation in an amended complaint.

Glazer argues that the district court erred by not granting his second motion for leave to amend his complaint.[2] As he sees it, leave was not required in the first place. But even if he is correct on this point (we need not decide), he waived his right to press the argument on appeal, having sought leave in the district court instead of simply filing an amended complaint, and having cited in support of his request the portion of Civil Rule 15 that says leave is required. *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002); *see also Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (per curiam) (concluding that a party waived its right to amend its pleading as a matter of course by instead seeking leave and inviting the district court to review the amendment).

Accordingly, we review the district court's ruling denying leave to amend for an abuse of discretion. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). Civil Rule 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, denying leave is appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The district court did not abuse its discretion in denying Glazer leave to amend. Glazer filed his motion to amend on February 18, 2010, four months after discovery of the "new" evidence, well after Chase's motion to dismiss had been filed and fully briefed, and one month after the magistrate recommended granting it. Permitting amendment in this situation, the district court concluded, "would work against the intent of the Federal Rules of Civil Procedure" by permitting a plaintiff to use the magistrate-referral process to test out his pleading and discover defects before seeking to amend them away in response to the magistrate's recommendation. Furthermore, according to

---

[2]The court also denied Glazer's first motion to amend in which he requested permission to add class allegations. The court found the proposed amendment futile only because Glazer could not maintain claims of his own. *See* Fed. R. Civ. P. 23(a)(4); *cf. Lewis v. Casey*, 518 U.S. 343, 357 (1996). It otherwise permitted the amendment. Because we are reinstating some of Glazer's claims, the district court will need to decide whether class treatment is warranted should Glazer request it on remand.

the district court, allowing amendment under these circumstances would encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint. We agree.

Glazer simply waited too long to seek leave to amend, and the delay unduly prejudiced Chase. *See United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) (noting that "a party must act with due diligence if it intends to take advantage of the Rule's liberality"). The evidence upon which the amendment was predicated was discovered on October 19, 2009. By that time, Glazer was fully aware of Chase's argument that it was not a debt collector because it began servicing the Klie loan prior to default. Chase's motion was fully briefed by September 14, 2009. The matter was referred to a magistrate on November 20, 2009. Apparently realizing that the magistrate could only recommend a ruling on Chase's motion, which Glazer could then challenge before the district judge, Glazer took a wait-and-see approach. (He offers no other plausible reason for waiting as long as he did.) Glazer should have sought leave as soon as he learned of this new fact, as it is directly relevant to Chase's argument, and he certainly should not have waited until the magistrate's report had issued. *See* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1488, p. 764 (3d ed. 2010) ("A party who delays in seeking an amendment" once the need to amend becomes apparent "is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time."). It was not an abuse of discretion to deny leave in this instance.

We addressed a similar situation in *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776 (6th Cir. 2000). There, in the district court, the plaintiffs in a footnote in their brief in response to the defendant's motion to dismiss prospectively asked for leave to amend in the event the court found the original complaint deficient. The district court dismissed the complaint without granting leave to amend. On reconsideration, the plaintiffs claimed error in dismissing the complaint without first granting leave to permit them to correct the deficiencies with an amended complaint. The district court denied the motion, noting that if the plaintiffs had sought to amend prior to the court's

consideration of the defendant's motion to dismiss, the court would have considered the defendant's motion in light of the proposed amendments. *Id.* at 784. Absent a request for leave, however, the defendant was entitled to a review of the complaint as filed. The district court reasoned: "Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Id.* We upheld the district court's exercise of discretion. *Id.* Similar reasoning supports the district court's decision in the present case not to allow Glazer to amend in response to the magistrate's recommendation.

IV.

Next, Glazer challenges the dismissal of his FDCPA claims against RACJ arising out of its conduct in relation to the attempted foreclosure on the Klie property. The district court ruled that these claims failed because RACJ's activities in bringing a mortgage foreclosure action were not debt collection. The question is whether mortgage foreclosure is debt collection under the Act. We hold that it is and therefore reverse.

A.

The FDCPA speaks in terms of debt collection. For example, to be liable under the statute's substantive provisions, a debt collector's targeted conduct must have been taken "in connection with the collection of any debt," *e.g.*, 15 U.S.C. §§ 1692c(a)–(b), 1692d, 1692e, 1692g, or in order "to collect any debt," *id.* § 1692f. In addition, to be a "debt collector" under the Act, one must either (1) have as his or her principal business purpose "the collection of any debts" or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due . . . another." *Id.* § 1692a(6). Despite the Act's pivotal use of the concept, however, it does not define debt collection. While the concept may seem straightforward enough, confusion has arisen on the question whether mortgage foreclosure is debt collection under the Act. We have not addressed the issue.[3]

---

[3]In *Wallace v. Washington Mutual Bank*, 683 F.3d 323 (6th Cir. 2012), we held that a law firm could suffer FDCPA liability for stating the wrong identity of the mortgage's owner in a foreclosure complaint. *Id.* at 326; *see* 15 U.S.C. § 1692e. Because the firm did not claim it was not engaged in debt collection when it commenced foreclosure proceedings, we did not address the issue.

Nor has the Consumer Financial Protection Bureau offered an authoritative interpretation on the matter. *See* 15 U.S.C. § 1692*l*(d).[4] Other courts have taken varying approaches on the issue.

The view adopted by a majority of district courts, and the one followed below, is that mortgage foreclosure is not debt collection. This view follows from the premise that the enforcement of a security interest, which is precisely what mortgage foreclosure is, is not debt collection. *See, e.g.*, *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices[,]" and "[n]o different rule applies in cases involving real property[.]"); *Hulse v. Ocwen Fed. Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002). However, if a money judgment is sought against the debtor in connection with the foreclosure, this view maintains, there *has been* debt collection, because there was an attempt to collect money. *See, e.g.*, *McDaniel v. South & Assocs., P.C.*, 325 F. Supp. 2d 1210, 1217–18 (D. Kan. 2004). Despite its pervasiveness in the district courts, we find this approach unpersuasive and therefore decline to follow it.

B.

As with all matters requiring statutory interpretation, we begin with the text. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Caminetti v. United States*, 242 U.S. 470, 490 (1917).

Unfortunately, the FDCPA does not define "debt collection," and its definition of "debt collector" sheds little light, for it speaks in terms of debt collection. *See* 15 U.S.C. § 1692a(6); *cf. In re Settlement Facility Dow Corning Trust*, 628 F.3d 769, 773 (6th Cir. 2010) (noting that a definition containing the defined term is not likely to be helpful). But the statute does offer guideposts. It defines the word "debt," for

---

[4]And contrary to Glazer's contention, the Supreme Court's recent decision in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (2010), did not resolve the issue.

instance, which is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. §1692a(5). The focus on the underlying transaction indicates that whether an obligation is a "debt" depends not on whether the obligation is secured, but rather upon the purpose for which it was incurred. *Cf. Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012). Accordingly, a home loan is a "debt" even if it is secured. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216–17, 1218 (11th Cir. 2012); *Maynard v. Cannon*, 401 F. App'x 389, 394 (10th Cir. 2010); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006).

In addition, the Act's substantive provisions indicate that debt collection is performed through either "communication," *id.* § 1692c, "conduct," *id.* § 1692d, or "means," *id.* §§ 1692e, 1692f. These broad words suggest a broad view of what the Act considers collection. Nothing in these provisions cabins their applicability to collection efforts not legal in nature. *Cf. Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (holding that "a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts" is a "debt collector" under the Act). Foreclosure's legal nature, therefore, does not prevent if from being debt collection.

Furthermore, in the words of one law dictionary: "To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." *Black's Law Dictionary* 263 (6th ed. 1990). The Supreme Court relied on this passage when it declared the following in a case concerning the Act's definition of "debt collector": "In ordinary English, a lawyer who regularly tries *to obtain payment* of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Heintz*, 514 U.S. at 294 (emphasis added). Thus, if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection. Nothing in this approach prevents mortgage foreclosure activity from constituting debt collection under the Act. *See*

*Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992) (explaining that "foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt"). In fact, *every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e*, forcing a settlement) or compulsion (*i.e.*, obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt). As one commentator has observed, the existence of redemption rights and the potential for deficiency judgments demonstrate that the purpose of foreclosure is to obtain payment on the underlying home loan. Such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment. *See* Eric M. Marshall, Note, *The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors the Protection They Deserve From Abusive Foreclosure Practices*, 94 Minn. L. Rev. 1269, 1297–98 (2010). Accordingly, mortgage foreclosure is debt collection under the FDCPA.

Other provisions in the Act reinforce this view. The Act nowhere excludes from its reach foreclosure or the enforcement of security interests generally. In fact, certain provisions affirmatively suggest that such activity *is* debt collection. Section 1692f prohibits "debt collectors" from using "unfair or unconscionable means" to "collect any debt." After stating this general prohibition, the section sets forth a non-exhaustive list of specific activities prohibited thereunder, one of which is "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" if, *e.g.*, "there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" 15 U.S.C. § 1692f(6)(A). Foreclosure in some states is carried out in just this way—through "nonjudicial action," the result of which is to "effect dispossession" of the secured property. *See, e.g.*, Mich. Comp. Laws § 600.3204 (authorizing foreclosure by advertisement only if no lawsuit has been filed to recover the underlying debt); Tenn. Code Ann. § 35-5-101 (permitting foreclosure by advertisement). The example's presence within a provision that prohibits unfair means to "collect or attempt to collect any debt" suggests that mortgage foreclosure is a "means" to collect a debt.

Consider also § 1692i. This section requires a debt collector bringing a legal action against a consumer "to enforce an interest in real property securing the consumer's obligation"—*e.g.*, a mortgage foreclosure action—to file in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). Although the provision itself does not speak in terms of debt collection, it applies *only* to "debt collectors" as defined in the first sentence of the definition, *id.* § 1692a(6), which *does* speak in terms of debt collection.[5] This suggests that filing *any* type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act.

Our holding today is supported by decisions from our sister circuits. *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3d Cir. 2005). In *Piper*, the defendant lawyers telephoned the plaintiff and mailed her multiple letters demanding payment of outstanding utility bills. Failure to pay the bills resulted in a lien being placed on the plaintiff's home. The lawyers later obtained a judgment against the plaintiff by way of an *in rem* civil action, and then sought to satisfy the judgment by foreclosing on the lien (selling the home). The lawyers argued that their practices were not subject to the FDCPA because "all [they] ever tried to do was enforce a lien in the manner dictated by" state law. *Piper*, 396 F.3d at 234. The Third Circuit disagreed. Pointing to pre-suit calls and demand letters, as well as some communications sent during the litigation, the court concluded that the fact that state law allowed for a lien to secure the debt did not "change its character as a debt or turn [the] communications to the Pipers into something other than an effort to collect that debt." *Id.* It further noted that "if a collector were able to avoid liability under the FDCPA simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the FDCPA." *Id.* (internal punctuation omitted).

---

[5]The venue provision applies only to those who satisfy the first sentence of the definition of "debt collector," not those who only meet the definition's final sentence (concerning security-interest enforcers). *See Kaltenbach v. Richards*, 464 F.3d 524, 528 (5th Cir. 2006); *Montgomery v. Huntington Bank*, 346 F.3d 693, 699–701 (6th Cir. 2003).

The Fourth Circuit echoed these sentiments in *Wilson*. There, a law firm retained by a bank notified the plaintiff that the firm was preparing to foreclose on the plaintiff's house because her home loan was in default. A week later, the firm commenced foreclosure proceedings and contacted the plaintiff to say that her home would soon be sold at auction. In response to the plaintiff's lawsuit claiming FDCPA violations, the firm argued that the plaintiff's debt ceased to be a "debt" under the Act once foreclosure proceedings began, and that foreclosure is distinct from the enforcement of an obligation to pay money. Disagreeing, the Fourth Circuit found that the debt remained a "debt" and that the firm's "actions surrounding the foreclosure proceeding were attempts to collect that debt." *Wilson*, 443 F.3d at 376. It noted that the law firm's "argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." *Id.* Seeing "no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods," the court held that the firm's "foreclosure action was an attempt to collect a 'debt.'" *Id.* at 376, 378. *Piper* and (especially) *Wilson* fully support our holding that mortgage foreclosure is debt collection under the Act.

## C.

Courts that hold that mortgage foreclosure is not debt collection offer different reasons for this view. Some reason that the FDCPA is concerned only with preventing abuse in the process of collecting *funds* from a debtor, and that foreclosure is distinct from this process because "payment of funds is not the object of the foreclosure action." *Hulse*, 195 F. Supp. 2d at 1204. We disagree. There can be no serious doubt that the ultimate purpose of foreclosure is the payment of money.

Some courts that hold mortgage foreclosure to be outside the Act rely principally on the definition of "debt collector." After defining a "debt collector" as one whose principal business purpose is the "collection of any debts" or who "regularly" collect debts, the definition's third sentence states: "For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate

commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).  One who satisfies the first sentence is a debt collector for *all* sections of the Act, but one satisfying only the third sentence is a "debt collector" limited to § 1692f(6) (concerning non-judicial repossession abuses). *See Kaltenbach*, 464 F.3d at 528; *Montgomery*, 346 F.3d at 699–701.  Therefore, these courts reason, "if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts." *Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 888 (D. Minn. 2008).  To avoid this result, these courts conclude that the enforcement of a security interest, including mortgage foreclosure, cannot be debt collection. *Id.*

We reject this reading of the statute.  The third sentence in the definition does not except from debt collection the enforcement of security interests; it simply "make[s] clear that some persons who would be without the scope of the general definition are to be included where § 1692f(6) is concerned." *Piper*, 396 F.3d at 236; *see Shapiro & Zartman*, 823 P.2d at 124.  It operates to *include* certain persons under the Act (though for a limited purpose); it does not *exclude* from the Act's coverage a method commonly used to collect a debt.  As the Third Circuit explained in *Piper*,

> [e]ven though a person whose business does not primarily involve the collection of debts would not be a debt collector for purposes of the Act generally, if his principal business is the enforcement of security interests, he must comply with the provisions of the Act dealing with non-judicial repossession abuses.  Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts.

*Piper*, 396 F.3d at 236.  And, in the words of the Fourth Circuit, "[t]his provision applies to those whose *only* role in the debt collection process is the enforcement of a security interest." *Wilson*, 443 F.3d at 378.

Other than repossession agencies and their agents, we can think of no others whose *only* role in the collection process is the enforcement of security interests.  A

lawyer principally engaged in mortgage foreclosure does not meet this criteria, for he must communicate with the debtor regarding the debt during the foreclosure proceedings, regardless of whether the proceedings are judicial or non-judicial in nature. *See, e.g.*, Mich. Comp. Laws § 600.3205a(1) (requiring the foreclosing party to serve on the borrower before commencing a foreclosure-by-advertisement a written notice containing information about the underlying obligation and stating how to avoid foreclosure); Tenn. Code Ann. § 35-5-101(e) (same); *cf. Reese*, 678 F.3d at 1217 (noting that a foreclosure notice serves more than one purpose). *See also Shapiro & Meinhold*, 823 P.2d at 124 (noting that "attorneys are not exempt [from the Act] merely because their collection activities are primarily limited to foreclosures"). Not so for repossessors, who typically "enforce" a security interest—*i.e.*, repossess or disable property—when the debtor is not present, in order to keep the peace.[6]

Finally, the fact that the only provision of the Act applicable to those who satisfy the third sentence in the definition (but not the first sentence) concerns *non-judicial* repossessions—precisely the business of repossessors—also suggests that the sentence applies only to repossessors. Indeed, all of the cases we found where §§ 1692f(6) and 1692a(6)'s third sentence were held applicable involved *repossessors*. *See, e.g.*, *Montgomery*, 346 F.3d at 700 (agreeing that "those who enforce security interests, *such as repossession agencies*, fall outside the ambit of the FDCPA," except for the purposes of § 1692f(6) (emphasis added)); *Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (noting that "repossessors" must comply with § 1692f(6)); *James v. Ford Motor Credit Co.*, 47 F.3d 961, 962 (8th Cir. 1995) (noting that "a few provisions of the Act subject repossession companies to potential liability when they act in the enforcement of others' security interests"); *Jordan v. Kent Recovery Servs.*, 731 F. Supp. 652, 657 (D. Del. 1990).

---

[6]Nothing in our decision precludes the application of the entire FDCPA to a repossessor who "regularly" collects debts for another and thus satisfies the general definition of "debt collector." 15 U.S.C. § 1692a(6).

D.

For these reasons, we hold that mortgage foreclosure is debt collection under the Act. Lawyers who meet the general definition of a "debt collector" must comply with the FDCPA when engaged in mortgage foreclosure. And a lawyer can satisfy that definition if his principal business purpose is mortgage foreclosure or if he "regularly" performs this function. In this case, the district court held that RACJ was not engaged in debt collection when it sought to foreclose on the Klie property. That decision was erroneous, and the judgment must be reversed.[7]

V.

The district court declined to exercise supplemental jurisdiction over Glazer's state-law claims after dismissing the federal ones. *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). Because we have revived some of Glazer's federal claims, it is appropriate to reinstate his state-law claims as well, including those against Chase. *Cf. Briner v. City of Ontario,* 370 F. App'x 682, 707 (6th Cir. 2010).

VI.

For all these reasons, we affirm in part and reverse in part the judgment of the district court. The portions of the judgment dismissing Glazer's FDCPA claims against Chase and denying Glazer leave to amend are affirmed. The portion dismissing Glazer's FDCPA claims against RACJ is reversed. The portion dismissing Glazer's state-law claims is vacated. The case is remanded for further proceedings consistent with this opinion.

---

[7]We decline to reach RACJ's alternative grounds for affirmance because the issues are not clearly presented in the briefs. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012). The district court can address the arguments if RACJ chooses to reassert them on remand.